[File No. Cr. 171.]

THE CITY OF DICKINSON, Appellant, v. GEORGE THRESS, Respondent.

(290 N. W. 653.)

Opinion filed March 4, 1940.

*J. W. Sturgeon,* for appellant.

*Otto Thress,* for respondent.

CHRISTIANSON, J. This action was commenced before the police magistrate of the city of Dickinson. The defendant was charged with keeping and harboring one female dog within the city without having the same registered and licensed as prescribed by the ordinance of the city. The police magistrate rendered judgment against the defendant and he appealed to the district court. The district court reversed the judgment of the police magistrate and ordered that the action be dis-

missed. Judgment was rendered accordingly, and the city has appealed.

The facts necessary to an understanding of the issues presented on the appeal are substantially as follows:

Dickinson has adopted the commission system of city government. The laws of the state of North Dakota provide:

"The board of city commissioners . . . shall be vested with the power and charged with the duty of making all laws or ordinances not inconsistent with the constitution and laws of this state, touching every object, matter and subject within the local government instituted by this chapter. . . ." Comp. Laws 1913, § 3799.

"The board of city commissioners shall have power: . . .

"3. To fix the amount, terms and manner of issuing and revoking licenses. . . .

"57. To license, regulate or prohibit the running at large of dogs and injuries and annoyances therefrom, and to authorize their summary destruction when at large, contrary to any such prohibition or regulation. . . .

"72. To adopt such other ordinances, not repugnant to the constitution and laws of the state, as the general welfare of the city may demand.

"73. To pass all ordinances, rules and regulations proper or necessary to carry into effect the powers granted to cities, with such fines, penalties or forfeitures as the city commissioners may deem proper; provided that no fine or penalty shall exceed one hundred dollars and no imprisonment shall exceed three months for one offense." Comp. Laws 1913, § 3818, ¶¶ 57, 72 and 73.

"When by this chapter the power is conferred upon the board of commissioners to do and perform any act or thing, and the manner of the same is not specifically pointed out, the board of commissioners may provide by ordinance the details necessary for the full exercise of such power." Comp. Laws 1913, § 3819.

The ordinances of the city of Dickinson, so far as material here, provide:

"Every owner or keeper of a dog or animal of the dog kind within the limits of the city of Dickinson shall annually on or before the 1st day of July cause the same to be registered, numbered, described and

licensed for one year from the 1st day of July to the ensuing year, in the office of the city auditor of said city. . . .

"Any person owning, keeping or harboring within said city any dog or animal of the dog kind, who shall fail or neglect to have the same registered as herein provided, shall be deemed guilty of a violation of this chapter."

Both before the police magistrate and in the district court the facts were stipulated to be as follows: "That the above named defendant, George Thress, was, on July 1st, 1938, and at all times since, the owner of one certain red cocker spaniel female dog, aged about two years; that during all of said time, he kept and harbored said female dog in a yard and pen at his home in the city of Dickinson; that said female dog was never allowed to run at large; that said defendant failed, neglected and refused to have such female dog registered, numbered, described and licensed by the city auditor of the city of Dickinson, for the fiscal year July 1st, 1938, to July 1st, 1939."

There is no question but the facts, as stipulated, show that the defendant violated the city ordinance by failing and neglecting to register, and obtain a license for, a dog owned by him, and kept and harbored by him within the city of Dickinson. But, the defendant contends that the city had no power to require the registration and licensing of dogs other than those running at large; that the statute (Comp. Laws 1913, § 3818, subd. 57.) authorizes a city only to license and regulate "the running at large of dogs;" and that consequently such statute, by implication, denies the power to a city to enact an ordinance requiring the registration and licensing of dogs not running at large, and therefore the city ordinance in question here, in so far as it requires the owner or keeper of a dog, not running at large, to register such dog and obtain a license for it, is beyond the power granted to the city and hence is null and void.

It is well settled that the legislature, under the police power, may regulate the keeping of dogs, Sentell v. New Orleans & C. R. Co. 166 U. S. 698, 702, 41 L. ed. 1169, 1171, 17 S. Ct. 693; 2 Am. Jur. 719, Animals, § 31, and that it may delegate to cities and villages the right to exercise such parts of the police power concerning dogs as it may deem proper. 2 Am. Jur. 719, Animals, § 31. See also Litchville v. Hanson, 19 N. D. 672, 124 N. W. 1119, Ann. Cas. 1912D, 876; 3

McQuillin, Municipal Corporations, 2d ed. p. 260; 3 C. J. S. pp. 1091, et seq. The propriety and necessity of vesting such power in cities and villages has received recognition generally throughout this country; and such power is deemed to be granted to cities by virtue of the general powers conferred and the usual general welfare clause, in the special or general act under which a city is organized. 3 McQuillin, Municipal Corporations, 2d ed. p. 260.

In Sentell v. New Orleans & C. R. Co., the Supreme Court of the United States said that dogs "have, from time immemorial, been considered as holding their lives at the will of the legislature, and properly falling within the police powers of the several states." 166 U. S. 702, 41 L. ed. 1171, 17 S. Ct. 693.

McQuillin (3 McQuillin, Municipal Corporations, 2d ed., p. 260) says: "To safeguard and promote the public health, safety and convenience municipal power to regulate the keeping and licensing of dogs within the corporate area is generally recognized. Accordingly ordinances regulating dogs and requiring them to be registered and licensed, and at times muzzled and prevented from going at large, are within the police powers usually conferred upon the local corporation. Such ordinances are authorized by virtue of general powers and the usual general welfare clause."

In American Jurisprudence (2 Am. Jur. 719–720, Animals, §§ 31–33) it is said:

"The police power of the state has been exercised to regulate and control dogs to a greater extent than any other class of domestic animals; and because of their tendency to revert to their savage state and their susceptibility to hydrophobia, it is well settled that they may be subjected to peculiar and drastic police regulations without depriving their owners of any Federal right, although the authorities are not always in entire agreement as to the course which such regulations may take and their general effect. The power to regulate is not limited to dogs running at large, but extends to the keeping of dogs. Since dogs are property, within the meaning of the constitutional provision against taking property without due process, the regulation of dogs must not conflict with this constitutional provision.

"A state may grant to cities and towns the right to exercise such

parts of the police power as to dogs as it may deem proper. The keeping of dogs in thickly settled municipalities is subject to rigid police regulations, without much regard to rights of the owners in such animals as property.

"The regulation of dogs usually takes the form of imposing license taxes on the keeping of such animals. It is within the power of a municipality to require all persons keeping dogs within the city limits to register and procure tags for the same, and to pay a fee therefor. The fee is generally considered a license for the purpose of controlling and regulating dogs, rather than a tax imposed for the sake of revenue. Reasonable statutes and ordinances providing for license fees on dogs are constitutional as a valid exercise of the police power of the state or city."

A city has, and can exercise, only such powers as are conferred upon it "either expressly or by fair implication, by the law which created it or by other laws, constitutional or statutory, applicable to it." The question presented for determination here, whether the city of Dickinson has power to require the registration and licensing of all dogs harbored and kept within the city, or whether it only has power to require the registration and licensing of dogs that are permitted to run at large, resolves itself to one of statutory construction. The question is: "Did the legislature, by subdivision 57, § 3818, supra, authorize a city to license and regulate only the running at large of dogs, and hence, by necessary implication, inhibit a city from requiring the registration and licensing of dogs that are kept and harbored within a city but are not permitted to run at large?"

The defendant invokes the well-known rule of statutory construction that "the expression of one thing is the exclusion of another," and contends that under this rule, subdivision 57, § 3818, supra, operates to deny to a city the power to provide for the registration and licensing of dogs, except such as are permitted to run at large.

The sole object of statutory construction is to ascertain and give effect to the purpose and intent of the lawmakers. 2 Lewis's Sutherland, Statutory Construction, 2d ed. pp. 693–696. All rules of construction are subservient to, and intended to effectuate, the great and fundamental principle that the object of all construction and interpre-

tation is to find out and give effect to the legislative intent. 2 Lewis's Sutherland, Statutory Construction, 2d ed. pp. 696 et seq. The rule invoked by the defendant "like other canons of statutory construction . . . is only an aid in the ascertaining of the meaning of the law and must yield whenever a contrary intention on the part of the law-makers is apparent." Springer v. Philippine Islands, 277 U. S. 189, 206, 72 L. ed. 845, 852, 48 S. Ct. 480; 59 C. J. pp. 984, 985; 2 Lewis's Sutherland, Statutory Construction, 2d ed. § 491; 26 Am. & Eng. Enc. Law, 2d ed. p. 605.

"This maxim," says Sutherland (2 Lewis's Sutherland, Statutory Construction, 2d ed. § 491), "like all rules of construction is applicable under certain conditions to determine the intention of the lawmaker when it is not otherwise manifest. Under these conditions it leads to safe and satisfactory conclusions; but otherwise the expression of one or more things is not a negation or exclusion of other things. What is expressed is exclusive only when it is creative, or in derogation of some existing law, or of some provisions in the particular act. The maxim is applicable to a statutory provision which grants originally a power or right. . . ."

The American & English Encyclopædia of Law (26 Am. & Eng. Enc. Law, 2d ed. p. 605) says: "The maxim should be applied only where it appears to point to the legislative intent; it is useful as an aid to discover that intent, but it should never override a different purpose plainly indicated."

Obviously the legislative intent must be sought first in the language of the statute itself,—considered as a whole. 59 C. J. pp. 952, 993. It must be presumed that the legislature intended all that it said, and that it said all that it intended to say. The legislature must be presumed to have meant what it has plainly expressed. 2 Lewis's Sutherland, Statutory Construction, 2d ed. p. 701. It must be presumed, also, that it made no mistake in expressing its purpose and intent. 26 Am. & Eng. Enc. Law, 2d ed. p. 653. Where the language of a statute is plain and unambiguous the "court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, but the statute must be given effect according to its plain and obvious meaning, and cannot be extended beyond it." 59 C. J. pp. 955–957. But where the language of the statute

is vague, ambiguous, uncertain or of doubtful meaning, the court must consider such pertinent external facts as may throw light upon the purpose and intent of the lawmakers, and thus, if possible, ascertain the true meaning of the language they employed. 26 Am. & Eng. Enc. Law, 2d ed. pp. 601, 632; 59 C. J. pp. 958 et seq. And where it is manifest upon the face of a statute that an error has been made in the use of words, number, grammar, punctuation or spelling, the court, in construing and applying the statute, will correct the error in order that the intention of the legislature as gathered from the entire act may be given effect. 59 C. J. pp. 986, 989, 991, 992; 26 Am. & Eng. Enc. Law, 2d ed. pp. 653–655.

It has been the established legislative policy throughout the whole history of this state to authorize a town or village to impose a license tax on dogs. Dak. Comp. Laws, 1887, § 1043; N. D. Comp. Laws, 1913, § 3861, subd. 5. It has, also, been the established policy to grant to all cities certain powers as to the registration and licensing of dogs. In 1887, the legislature of the Territory of Dakota provided that a city council, among others, should have the power: "To regulate, restrain and prohibit the running at large of horses, cattle, swine, sheep, goats, geese, and dogs, and to impose a tax or license on dogs." Dak. Laws 1887, chap. 73. This provision was embodied in the Dakota Compiled Laws, 1887, § 885, subd. 64, was continued in force as a part of the laws of the state of North Dakota by the provisions of the Constitution (N. D. Const. Schedule § 2), and was adopted without change and made a part of Revised Codes of North Dakota, 1895. See Rev. Codes 1895, § 2148, subd. 62. In 1905, the legislature enacted a law providing for the organization and government of cities. Laws 1905, § 62. This law was largely a re-enactment of the provisions of chapter 73, Laws 1887, with certain additions and changes. In the Act of 1905, the provision relating to the power of cities as to the regulation, restraint and prevention of the running at large of horses, mules, cattle, etc., was placed in a separate subdivision wherein provision was made, also, for "the establishment and maintenance of public pounds for the impounding of any such stock" found running at large (Laws 1905, chap. 62, § 47, subd. 61); and the provision relating to the regulating and licensing of dogs was placed in a separate subdivision (id. subd. 62).

757

In 1907, the legislature provided for the commission system of government in cities, and in prescribing the general powers of the Board of City Commissioners under the commission system, it adopted literally the provision contained in Laws 1905, chap. 62, § 47, subd. 61, and the provision as then adopted has been retained without change and is at present embodied in § 3818, Comp. Laws 1913, which reads: "The Board of City Commissioners shall have power: . . . To license, regulate or prohibit the running at large of dogs and injuries and annoyances therefrom, and to authorize their summary destruction when at large, contrary to any such prohibition or regulation." (Subd. 57.)

The avowed purpose of § 3818, supra, was to grant certain powers to the Board of City Commissioners in cities that have adopted the commission form of government. It was a grant of power to a city that is operating under the commission form to legislate with respect to certain designated matters. Subdivision 57 was a grant of power to legislate concerning dogs. It will be noted that the legislature sought to confer upon a city not only power to license and to regulate as to dogs, but apparently it, also, had in mind to confer power to legislate to some degree with respect to "injuries and annoyances" occasioned by dogs. It is not possible to determine from the statute what authority the legislature sought to vest in the City Commission to legislate upon the subject of such "injuries and annoyances," because the language in the statute in so far as it purports to confer power to legislate concerning such "injuries and annoyances" is meaningless. If the statute is given literal effect according to the punctuation marks, it says: "The Board of City Commissioners shall have power to license, regulate or prohibit injuries and annoyances" from the running at large of dogs.

Clearly some error was made in subdivision 57. The proposition that the Board of City Commissioners should license "injuries and annoyances" is manifestly an absurdity. It is, of course, impossible to give any effect to the intention, if any, the legislature may have had in mind to confer power upon a city to legislate concerning such injuries and annoyances. The remainder of the subdivision, however, evidences a legislative intent to confer upon the Board of City Commissioners power to license and power to regulate as to dogs. As said, throughout the entire history of the state, up to the time the Statute

of 1905 was enacted, the legislature had conferred upon all cities the power to impose a license tax upon dogs, as well as power to regulate and prohibit the running at large of dogs. This same power also had been conferred upon villages and has been permitted to remain without change. There is nothing in the Act of 1905 or in the Act of 1907 that evidences any legislative intention to restrict or take away from cities any power formerly conferred upon them involving the control of matters of local concern.

In the last analysis the contention of the defendant that the legis, lature, by the enactments of 1905 and 1907, decided to change the policy formerly existing, and henceforth deny to a city the power to impose a license tax upon dogs, rests upon a comma. All uncertainty,— and the somewhat unreasonable result that would follow by giving literal effect to the punctuation marks in subdivision 57 as published,— would disappear if the sentence were punctuated to read thus: "The board of city commissioners shall have power: To license, regulate or prohibit the running at large of, dogs . . . and to authorize their summary destruction when at large contrary to any such prohibition or regulation."

Punctuation marks do not have the same controlling force as evidence of legislative intention as do words. Punctuation is subordinate to context; and the presence or absence of a comma in a statute will not control its meaning where the language of the statute considered as a whole evidences an intention at variance with that which the presence or absence of the comma tends to indicate. 26 Am. & Eng. Enc. Law, 2d ed. p. 631; 59 C. J. § 590, pp. 989–991; Re Peterson, 186 Iowa, 75, 172 N. W. 206; Dowling v. Board of Assessors, 268 Mass. 480, 168 N. E. 73; State ex rel. Jones v. Erickson, 75 Mont. 429, 244 P. 287; Barrett v. Van Pelt, 268 U. S. 85, 90, 91, 69 L. ed. 857, 860, 861, 45 S. Ct. 437; United States v. Lacher, 134 U. S. 624, 33 L. ed. 1080, 10 S. Ct. 625; United States v. Shreveport Grain & Elevator Co. 287 U. S. 77, 82, 83, 77 L. ed. 175, 178, 179, 53 S. Ct. 42; Costanzo v. Tillinghast, 287 U. S. 341, 344, 77 L. ed. 350, 353, 53 S. Ct. 152.

Corpus Juris (59 C. J. pp. 989–991) says: "Punctuation is no part of a statute and cannot control its construction against the manifest intent of the legislature, and the court will punctuate or disregard

punctuation as may be necessary to ascertain and give effect to the real intent. Punctuation may, when the meaning of the statute is uncertain, be looked to in ascertaining the real meaning, or, if the punctuation gives the statute a reasonable meaning apparently in accord with the legislative intent, it may be used as an additional argument for adopting the literal meaning of the words of the statute thus punctuated. 'It will not be disregarded unless it is necessary to do so, and a statute which is clear and grammatical will not be extended by repunctuation. Punctuation as a means of interpretation will be resorted to only when all other means have failed."

In United States v. Lacher, 134 U. S. 624, 33 L. ed. 1080, 10 S. Ct. 625, supra, the Supreme Court of the United States, speaking through Chief Justice Fuller, said: "For the purpose of arriving at the true meaning of a statute, courts read with such stops as are manifestly required."

In Barrett v. Van Pelt, 268 U. S. 85, 69 L. ed. 857, 45 S. Ct. 437, supra, it was said: "Punctuation is a minor, and not a controlling, element in interpretation, and courts will disregard the punctuation of a statute, or repunctuate it, if need be, to give effect to what otherwise appears to be its purpose and true meaning."

We are of the opinion that when the statute providing for the commission system of city government is construed as a whole, it evidences a legislative intention to confer upon the Board of City Commissioners power to provide for the registration and licensing of all dogs kept or harbored within the city, as well as authority to regulate or prohibit the running at large of dogs. Registration of dogs kept or harbored in a city would furnish a proper basis for regulations relating to the running at large of dogs. The licensing is incident to the registration and tends to render more effective any regulations that may be enacted concerning the running at large of dogs.

In this state the existence of power in a city to require that all dogs kept or harbored within its boundaries be registered and licensed has been recognized throughout the years. It is a matter of common knowledge that the several cities in this state have provided for the registration of .dogs and the payment of a license tax, and we are not aware

that the power to do so has ever been questioned until such power was challenged in this controversy.

The judgment appealed is reversed and the cause is remanded for further proceedings conformable to law.

NUESSLE, Ch. J., and MORRIS, BURR, and BURKE, JJ., concur.