DUMONT LOWDEN, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. OLAF HANSEN, BUILDING INSPECTOR OF THE BOROUGH OF DUMONT, DEFENDANT-RESPONDENT, AND PETER H. SMITHUYSEN, CARL F. OLANDER, JOHN DI COMA AND JOSEPH GRANDE, INTERVENORS, THIRD-PARTY PLAINTIFFS-APPELLANTS, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF DUMONT, THIRD-PARTY DEFENDANT-RESPONDENT.

Argued May 7, 1962—Decided June 29, 1962.

*Mr. James A. Major* argued the cause for the appellants (*Messrs. Major & Major,* attorneys).

*Mr. George A. Brown* argued the cause for the plaintiff-respondent (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

*Mr. Robert E. Personette* argued the cause for the defendant-respondent and the third-party defendant-respondent.

The opinion of the court was delivered by

JACOBS, J.   In 1942 the Borough of Dumont adopted a comprehensive amendatory zoning ordinance which divided the borough into District A for 1 and 2 family houses, District B for garden apartments, District C for apartment houses, District D for business property and District E for industrial property.   The legend on the zoning map which accompanied the zoning ordinance disclosed that District A had a solid white background, District B was lined, Districts C and D were cross-lined and District E had a solid black background.   Public premises such as schools, parks and firehouses were specifically designated as such, mostly against a solid white background.   A 17-acre tract on the map bore the designation "West Shore R.R. Co."; this tract had a solid white background and was bounded on the north, east and south by property with a solid white background.   On its west side it was bounded by the "West Shore Railroad Co." right of way which was evidenced on the map by five or six close parallel lines.   The property west of the railroad right of way was partly within District A and partly within District C or D.

At the time of the adoption of the ordinance, the 17-acre tract was known generally as the Lowden tract or Lowden's Pit and was used as a railroad turntable and as a terminal for freight and passenger cars.   When the railroad discontinued its service to Dumont, it sold the Lowden tract and the plaintiff is now the owner.   The plaintiff applied for a permit to build garden apartments on the property but the Dumont Building Inspector denied its application.   On June 22, 1960 the plaintiff filed a proceeding in lieu of prerogative writ to compel the issuance of the permit, and the Building Inspector filed an answer in which he alleged that the plaintiff's property was "not zoned so as to permit the erection of garden-type apartments."   The plaintiff then moved for judgment on the pleadings.   No one appeared in opposition and the plaintiff was granted a judgment by default on August 2, 1960.

Without allowing the lapse of time within which there might be a seasonable notice of appeal or motion to vacate, the plaintiff proceeded immediately to expend sums which, according to an affidavit of its vice president, aggregated $11,355.72. This expenditure was made at its peril. *Cf. Hodgson v. Applegate,* 31 *N. J.* 29, 43 (1959). Before the close of August, 1960 an application was filed by neighboring citizens and taxpayers for permission to intervene to the end that the default judgment might be vacated and a cross-claim filed against the Building Inspector along with a third-party complaint against the Mayor and Council of the Borough of Dumont.

In September 1960 Judge O'Dea of the Bergen County Court issued an order to show cause why the application for intervention should not be granted, and, in the meantime, he stayed the operation of the default judgment obtained by the plaintiff against the Building Inspector. On the return of the order to show cause the judge heard argument and, acting well within his discretionary powers, granted the application to intervene and continued the restraint against the operation of the default judgment. See *R. R.* 4:37; cf. *Wolpe v. Poretsky,* 79 *U. S. App. D. C.* 141, 144 *F. 2d* 505 (*D. C. Cir.* 1944), cert. denied 323 *U. S.* 777, 65 *S. Ct.* 790, 89 *L. Ed.* 621 (1944); 4 *Moore's Federal Practice par.* 24.13, *pp.* 97–100 (*2d ed.* 1950). In the course of his consideration of the matter Judge O'Dea expressed the view that the Lowden tract was in District A. He noted that it was "all white the same as all the adjoining property around it is white," and that if he "as a lawyer, certainly as a layman looked at that zoning map to buy property in that area" he would say "that the whole thing is zoned A Residential." *Cf. Appley v. Bernards Twp.,* 128 *N. J. L.* 195 (*Sup. Ct.* 1942), aff'd 129 *N. J. L.* 73 (*E. & A.* 1942); *Bassett, Zoning* 30, 96 (1940).

In November 1960 Judge O'Dea denied a motion by the plaintiff for summary judgment against the intervening parties and for dismissal of their third-party complaint.

The plaintiff then applied to the Dumont Board of Adjustment for a "construction and interpretation of the Zoning Map" and obtained a ruling from the Board to the effect that the plaintiff's property "is unzoned." This ruling has no binding effect on us. See *Francey v. De Massi Motor Car Co.*, 67 *N. J. Super.* 234, 237 (*App. Div.* 1961). A supplemental complaint attacking the Board's action was filed by the intervenors, an answer to this complaint was filed by the plaintiff, and thereafter the plaintiff moved for summary judgment and dismissal of the intervenors' third-party complaint and supplemental complaint. On September 1, 1960 a Superior Court Judge granted the plaintiff's motion (*cf.* 6 *Moore's Federal Practice, par.* 56.14[2], *p.* 2099 (*2d ed.* 1953)) and ordered that judgment be entered for the plaintiff and that the Building Inspector issue a building permit pursuant to the plaintiff's application. The intervenors filed notice of appeal to the Appellate Division which affirmed in an unreported opinion. We granted certification on application of the intervenors.

In *Appley v. Bernards Twp., supra,* the court had occasion to deal with a zoning map which may be considered as comparable to the zoning map of Dumont. The township had been divided into five districts consisting of residence zones A, B and C, a business zone and an industrial zone. Zone A had a solid white background, zone B a dotted background and zone C a lined background. The business zone was cross-lined and the industrial zone was double lined. The schools, parks, churches and cemeteries were designated as such on solid white backgrounds. In particular, the Old Basking Ridge School Property was on a white background, was designated as a school, and was bounded on three sides by properties in the residence B zone and on the fourth side by property in the business zone. The township's ordinance embodying the zoning map was adopted in 1937 and at that time the Old Basking Ridge property was in actual use as a school. In March 1941 its school use was abandoned, and in June 1941 the township adopted

an amendatory ordinance which provided that the property could be used for business purposes. The amendatory ordinance was attacked by residents of the neighborhood and was set aside by the former Supreme Court in an opinion by Justice Heher, adopted later by the Court of Errors and Appeals. It is highly significant that throughout the proceeding no one questioned that the Old Basking Ridge property was in zone A. The legend on the township's Zoning Map stated unequivocally, as did the legend on Dumont's map, that property on solid white background was in the residential zone A; in striking the amendatory ordinance which sought to permit the property to be used for business purposes, Justice Heher had this to say:

"The ordinance as originally framed gave recognition to the school lands as an essentially residential area; and the proofs are one on the proposition that there has since been no change of conditions to warrant the reclassification. The abandonment of the school use did not, of course, effect a change in the character of the *locus*. And there is an utter lack of evidence tending to show need for the expansion of the preexisting business district. It is fundamental in zoning under the police power that lands in like situation are to be classified alike. Arbitrary discrimination is inadmissible. The action must be grounded in reason and judgment based upon the policy of the statute. It must be in accordance with law or it is capricious. The amendment flouts the mandate of the statute that zoning rules and regulations shall be made with 'reasonable consideration' to the 'character of the district and its peculiar suitability for particular uses,' the maintenance of property values, and the devotion of land in the municipality to its 'most appropriate use.' While factually dissimilar, the general principle was applied in *Guaranty Construction Co. v. Bloomfield*, 11 *N. J. Misc.* 613; *Linden Methodist Episcopal Church v. Linden, supra* [113 *N. J. L.* 188]; *Mulleady v. Trenton*, 9 *N. J. Misc.* 1102." 128 *N. J. L.*, at *p.* 199.

We are satisfied that the zoning map of Dumont may not reasonably be read as having left the 17-acre West Shore R. R. Co. tract entirely unzoned. The map purported to zone the entire borough and it contained nothing which evidenced anything to the contrary. The fact that public premises such as schools, parks and firehouses were designated as such did not mean that they were on unzoned properties; on the contrary, the designations simply re-

ferred to current uses and did not affect the underlying zone locations which were controlled by the map legend. See *Appley v. Bernards Twp., supra.* Similarly, the West Shore R. R. Co. designation on the 17-acre tract simply referred to its then railroad use, and did not alter the fact that in conformity with the map's legend, its solid white background placed the tract within the District A residence zone. If any of the neighboring residents had studied the map at the time of the passage of the zoning ordinance, they presumably would have concluded that the tract, though then properly used for railroad purposes, was in the District A residence zone and would be controlled by the limitations of that zone in the event the railroad use ever ceased. They certainly would not have concluded that upon cessation of the railroad use the tract would be entirely unzoned and thereby usable for business or industrial purposes even including those distasteful uses which are specifically excluded from the business and industrial zones by the terms of the ordinance. By way of illustration, slaughtering establishments are excluded from the business zone and junkyards are excluded from the industrial zone. If the 17-acre tract were viewed as unzoned, these and other highly discordant activities would be permissible despite the acknowledged residential surroundings. The zoning ordinance and map may not be read to produce a result so lacking in good sense and contrary to the just interests of the borough and its inhabitants; indeed if they were so read the validity of the entire zoning plan might well be brought into question. *Cf.* Haar, "In Accordance with a Comprehensive Plan," 68 *Harv. L. Rev.* 1154, 1160 (1955).

The plaintiff contends that when the Mayor and Council of the Borough of Dumont adopted the 1942 zoning ordinance they "did not intend or seek to place railroad property into a zoning classification." In support, the plaintiff has submitted affidavits, including several by borough officials in office in 1942, indicating that at that time they assumed that the railroad use would never be discon-

56

tinued and that consequently there was no need for placing the railroad property in any zoning classification. Despite the judicial readiness to receive extrinsic aids in the interpretation of legislative enactments (*cf. N. J. Pharmaceutical Ass'n v. Furman*, 33 *N. J.* 121, 130 (1960)) much of the material in the affidavits would probably be viewed as not legally admissible in evidence. While reports and comparable documents evidencing legislative purpose have been freely considered by this court, it has not at any time suggested that it would approve the extraordinary course of taking testimony of individual legislators as to their actual intent or understanding when they voted upon the legislation. See 2 *Sutherland, Statutory Construction* § 5013 (*3d ed.* 1943); *cf. James v. Todd*, 267 *Ala.* 495, 103 *So. 2d* 19, 28 (1957), appeal dismissed, 358 *U. S.* 206, 79 *S. Ct.* 288, 3 *L. Ed. 2d* 235 (1958); *Board of Education v. Presque Isle County Bd. of Ed.*, 364 *Mich.* 605, 111 *N. W. 2d* 853, 856 (1961). See also *Bass v. Allen Home Improvement Co.*, 8 *N. J.* 219, 227 (1951); *Pelrangeli v. Barrett*, 33 *N. J. Super.* 378, 386 (*App. Div.* 1954). In any event, we need not pursue this issue for we are satisfied that even assuming the borough officials had a different understanding at the time of the passage of the 1942 ordinance, that understanding was unexpressed and may not now be permitted to overcome the clear meaning and legal effect of the zoning ordinance. See *Pelrangeli v. Barrett, supra; Loveladies Property, etc. v. Barnegat City, etc., Co.*, 60 *N. J. Super.* 491, 504 (*App. Div.* 1960), certif. denied 33 *N. J.* 118 (1960); *cf.* 6 *McQuillin, Municipal Corporations* § 20.45, *p.* 109 (*3d ed.* 1949); *Evans v. Roth*, 356 *Mo.* 237, 201 *S. W. 2d* 357, 364 (1947). It must be borne in mind that the understanding of the officials was never conveyed to the inhabitants of the borough who had the right to rely in their purchase of homes and in their affairs generally on the measure of stability afforded by the duly advertised and formally enacted zoning ordinance. See *Rockhill v. Chesterfield Twp.*, 23 *N. J.* 117, 129 (1957); *cf. Highland Village Land Co.*

*v. City of Jackson,* 137 *So. 2d* 549, 551 (*Miss.* 1962). The ordinance admittedly continues with its present force until lawfully amended. The termination of the railroad use did not effect any such amendment (see *Appley v. Bernards Twp., supra*) although it did place upon the borough officials the responsibility of carefully re-examining and justly determining whether there should now be revision of the ordinance. The plaintiff is, of course, at liberty to seek such revision, or a variance under *N. J. S. A.* 40:55–39, or such other relief as it deems appropriate; in the meantime the pre-existing provisions of the ordinance remain in effect and restrict the use of the property to that permitted in District A.

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.