Richard P. RAUSCH, Petitioner and Respondent,

v.

LeRoy NELSON as the Register of Deeds of Burleigh County, a Political Subdivision of the State of North Dakota, Respondent and Appellant.

No. 8186.

Supreme Court of North Dakota.

April 15, 1965.

520

Albert A. Wolf, State's Atty., Bismarck, and E. J. Rose, Bismarck, of counsel, for appellant.

Cox, Pearce, Engebretson, Murray & Anderson, Bismarck, for respondent.

ERICKSTAD, Judge.

LeRoy Nelson, Register of Deeds of Burleigh County, appeals from the judgment of the District Court of Burleigh County which ordered that a writ of mandamus issue.

The judgment ordering the writ required the Register of Deeds to fully record at length the deed of the petitioner, Richard P. Rausch, in "the books and records maintained for such instrument," to "endorse upon said deed the number or letter designating the book of records in which the record of the instrument is made and the page upon which it is recorded," and to "comply with all of the statutes and requirements relative to the filing and recording of instruments of conveyance at length as provided by law." It further determined that the use of microfilm equipment and the system adopted by the Register of Deeds in recording instruments in connection therewith did not constitute a legal method of recording real estate transfers in North Dakota.

The facts are that the petitioner brought a certain deed relating to real estate situated in Burleigh County, in which he was a grantee, to the Register of Deeds of Burleigh County for recording. Prior thereto, pursuant to a resolution of the Board of County Commissioners of Burleigh County, certain microfilm processing equipment had been secured, installed, and used in the office of the Register of Deeds. The deed, therefore, when received by the Register of Deeds, was given a document number, which was stamped thereon. It was entered fully in the reception book, except that in lieu of book and page information, the document number was inserted. It was entered in the grantor index, the grantee index, and the tract index in the same manner. Instead of being recorded at length in a book, the front and reverse sides of the deed were photographed. The film was then developed and placed in a transparent jacket or envelope bearing the document number. The developed film was placed in a filing cabinet kept in the office of the Register of Deeds, where it is identified by the document number attached thereto.

It is further stipulated as follows:

"* * * (g) Neither the petitioner or any other member of public will be entitled to immediate or uninterrupted access to such film library; that neither petitioner or any member of the public will have personal access to such film strip or to the film cabinet but that respondent and his employees upon request will secure such film strip so requested and will place the same in a reader machine which will place a larger image of said instrument upon a screen or glass reflector thus enabling the same to be read or examined; that when the same has been read or examined, the same will be returned to the film cabinet by respondent or his employees.

"(h) Copies of said film strip including enlarged or 'blown up' replicas will be available upon request at the charge of $1.00 to be made by the Register of Deeds. * * *"

The appellant Register of Deeds claims that the use of microfilm in the Register of Deeds office is authorized by § 11–10–19 of the North Dakota Century Code, whereas the petitioner Rausch argues that other statutes providing for the recording and the indexing of deeds by reference to books and page numbers and the endorsement of book and page information on deeds prohibit the use of microfilm in the recording of deeds.

The pertinent statutes read as follows:

"11–10–19. Use of photography in making county records.—Whenever the board of county commissioners shall deem it expedient to do so, photography may be used in the making of permanent county records. When permanent photographic or photostatic copies of any instrument, document, or decree

which is required to be recorded are thus made, such copies may be filed and kept instead of the record books or records of instruments or documents required by any provision of this code.

\*　　\*　　\*　　\*　　\*　　\*

"11–18–01. Register of deeds' duties —Recording instruments—Abstracts— Recording brands.—The register of deeds shall:

"1. Keep a full and true record, in proper books provided for that purpose, of each patent, deed, mortgage, bill of sale, chattel mortgage, judgment, decree, lien, certificate of sale, and other instrument required to be filed or admitted to record, if the person offering such instrument for filing or recording shall first pay to him the fees provided by law for such filing or recording;

"2. Endorse upon each instrument filed with him for record or otherwise the date and the hour and minute of the day of such filing;

"3. Endorse upon each instrument, when the same is recorded, in addition to the data specified in subsection 2 of this section, the number or letter designating the book of records in which the record of the instrument is made and the page upon which it is recorded;

"4. When the instrument is recorded, endorse thereon, in a note at the foot of the recorded instrument, the date and the hour and minute of the day when it was filed with him and the book of records in which the record thereof is made and the page upon which it is recorded. \* \* \*

\*　　\*　　\*　　\*　　\*　　\*

"11–18–07. Separate tract indexes to be kept for transfers and for liens— Form of indexes.—The register of deeds shall keep a separate tract index of the deeds, contracts, and other instruments which are not merely liens and a separate tract index of the mortgages and other liens affecting or relating to the title to real property. Such indexes shall be in substantially the following forms:

"[Form of tract index provides for volume and page.]

"11–18–08. Separate grantor and grantee indexes to be kept for transfers and for liens—Contents.—The register of deeds shall keep separate grantor and grantee indexes of the deeds, contracts, and other instruments not merely liens and separate grantor and grantee indexes of the mortgages and other instruments which are liens affecting or relating to the title to real property. Such indexes shall show:

"1. The names of the grantors and of the grantees;

"2. The dates of the several instruments filed for record;

"3. The dates upon which the several instruments are filed; and

"4. The descriptions of real property affected by such instruments.

\*　　\*　　\*　　\*　　\*　　\*

"11–18–11. Register of deeds to record or file instruments.—When an instrument affecting the title to or creating a lien upon real estate within the county is numbered and entered in the reception book and indexed, it shall be recorded or filed as provided by law. The register of deeds shall write or stamp, or cause to be written or stamped, at the beginning of a recorded instrument the words 'document number' and shall add thereto the number stamped or written on the document. He shall add, immediately after the

record of such instrument, a certificate reciting that the instrument was filed in his office and giving the date and hour of filing. He shall authenticate the certificate with his official signature, but he need not affix his official seal thereto." North Dakota Century Code.

Section 11–10–19 of the North Dakota Century Code became a law as a result of the passage of House Bill 131, approved on February 18, 1941. This bill, which became Chapter 234 of the Session Laws of 1941, was introduced by Representatives Shure, Beede, and Aker, who were designated as the Special Committee on Code Revision. In attempting to determine the legislative intent of this bill, the trial judge tried to learn its legislative history.

■ It is proper to resort to legislative history in attempting to construe an ambiguous act.

"Logically the events occurring immediately prior to the enactment of the statute ought to be a most lucrative source for information indicative of the legislative intent embodied therein. Therefore, the history of the measure during its enactment, that is, during the period from its introduction in the legislature to its enactment, has generally been the first extrinsic aid to which courts have turned in attempting to construe an ambiguous act. Events during this period indicative of the legislative intent consist chiefly in statements by various parties as to the nature and effect of the proposed law and statements or other evidence as to evils requiring legislative relief. * * *" 2 Sutherland, Statutory Construction § 5003, at 484–485 (3d ed. Horack 1943).

In the instant case an examination of the House and Senate journals of the 1941 session of the Legislature availed little.

Page 92 of the House Journal indicates the passage of a motion that a committee of three be appointed by the Speaker to meet with a like committee from the Senate to confer with the Code Commission on the introduction of suggested corrective measures, and that Representatives Shure, Beede, and Aker were appointed to this committee. We have been unable to find any written report of this committee or any reference in the legislative journals of the 1941 session to a report of this committee relating to House Bill 131. No report was made by the Committee on Counties, the standing committee to which this bill was referred on its introduction in the House of Representatives, other than that the committee had considered the bill and recommended its passage. The bill followed a similarly uneventful course through the Senate.

Being thus unable to ascertain the intent of the Legislature and having made other efforts, the trial judge communicated with one of the members of the Code Revision Commission, hoping that he might thereby derive some assistance in obtaining the history of the act.

The Code Revision Commission was authorized by Senate Bill 88 of the 1939 session of the State Legislature. This bill became Chapter 110, of the 1939 Session Laws. The Revisor's Note to § 11–1019, contained in the report of the Code Revision Commission, indicates that the source of this section was Chapter 234 of the Session Laws of 1941, and that it was revised for codification without change in meaning.

Although the Code Revision Commission member was unable to refer the trial judge to any written report of the Commission which might help in ascertaining the intent of the Legislature, he replied by letter as follows:

"I have a rather distinct recollection of the introduction of Chapter 234, and its incorporation in the code. The thought we had in mind was that a photographic or photostatic process

would be quicker, cheaper and more accurate than the copying by hand. I do not believe that any thought of microfilming was discussed. My recollection is that some of the county offices already had some equipment for photostating, and the thought was to legalize it, and to permit other counties to adopt that method.

"It is a little difficult for me to see how a microfilm copy would comply with requirements of the statute relative to recording instruments, such as for instance Section 11–18–12. However, the Attorney General may be right but I am sure that the Code Commissioners did not have microfilming in mind."

Relying quite heavily on this member's recollection, the trial judge found it apparent "that it was the intention, in introducing Chapter 234, to validate the methods of recording then being used by some counties in North Dakota, namely, the photographing of real estate transfers, the authority not then being given by any statute to the board of county commissioners of the various counties."

The judge further concluded that this chapter was required to make certain that the use of photography in recording instruments in the office of the Register of Deeds would comply with Chapter 47–19 of the North Dakota Century Code, entitled "Record Title," and that, as no reference was made in Chapter 234 to the indexes required by other sections of our code to be kept by the Register of Deeds, this chapter could not be construed to permit the use of microfilm and the system of indexing by document number rather than by book and page.

Sutherland points out that reports of code revision commissions are often used in construing provisions in revisions and compilations of state statutes.

"Legislative commissions are also commonly used to prepare revisions or compilations of statute law, either of all the statutes of the state or only of those referring to a particular subject. Such commissions may be composed wholly of members of the legislature or wholly of private individuals or may be composed of representatives of both, depending upon the practice in the state in question. In construing provisions in an official revision or compilation of the statutes of a state, courts have often referred to the report or notes of the revisory commission for aid." 2 Sutherland, Statutory Construction § 5008 (3d ed. Horack 1943).

The question arises as to whether the same consideration should be given the recollection of a code revision commission member.

■ In considering this question we note that the testimony of a member of a legislature as to the intent of the legislature in enacting a certain statute is not acceptable.

"As a corollary to the general rule against the use of statements of individual legislators made during debate on the bill, in construing a statute the courts refuse to consider testimony as to the intent of the legislature embodied therein by members of the legislature which enacted it. In addition to the reasons against the use of statements of individual legislators, the courts probably wish to avoid having to pass upon the credibility of legislators and ex-legislators." 2 Sutherland, Statutory Construction § 5013 (3d ed. Horack, 1943.)

In a decision rendered by our court in 1953 we said:

" * * * The plaintiffs have here offered the testimony of three members of the 1941 Legislature, who testified as to the intent of the Legislative Body in the passage of Chapters 136 and 286. That this testimony was incompetent for any purpose seems apparent. The plaintiffs have cited no authority to sustain the competency of this testi-

mony. They admit that such evidence could not be offered to prove legislative intent or to aid in the interpretation of any Act or to aid in the reaching of any conclusion as to the meaning of any Act, but they argue that such evidence shows that the members of the Legislature did not discern any conflict between Chapters 136 and 286. Whether the members of the Legislature discerned a conflict is manifestly immaterial. The testimony of individual members of the Legislature is inadmissible, whether it pertains to legislative intention or motives of the members in enacting the law, the meaning of which is being determined. Sutherland on Statutory Construction, 3d Ed., (Horack) Section 5013; United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007." State v. California Co., 79 N.D. 430, 56 N.W.2d 762, at 763.

In following this view the Supreme Court of Michigan in 1961 quoted our court with approval. Board of Education of Presque Isle Tp. School Dist. No. 8, Presque Isle County v. Presque Isle County Bd. of Educ., 364 Mich. 605, 111 N.W.2d 853.

Some of the other decisions so holding are as follows: State Wholesale Grocers v. Great Atl. & Pac. Tea Co., 154 F.Supp. 471 (N.D.Ill.E.D.1957); James v. Todd, 267 Ala. 495, 103 So.2d 19; Decker v. Russell, Ky., 357 S.W.2d 886; Dumont Lowden, Inc. v. Hansen, 38 N.J. 49, 183 A.2d 16.

 It is our opinion that personal recollection by one member of a code revision commission as to the commission's intent in recommending a particular bill should be rejected for the same reasons.

 Our study of Section 11–10–19 of the North Dakota Century Code has caused us to conclude that the statute is not ambiguous.

"Where the language of a statute is plain and unambiguous, there is no oc-

casion for construction, and this is true even though other meanings of the language employed could be found. The court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, or assume a legislative intent in plain contradiction to words used by the legislature, and need not search for the reasons which prompted the legislature to enact the statute." 82 C.J.S. Statutes § 322 (1953).

"Obviously the legislative intent must be sought first in the language of the statute itself—considered as a whole. 59 C.J. pp. 952, 993. It must be presumed that the Legislature intended all that it said, and that it said all that it intended to say. The Legislature must be presumed to have meant what it has plainly expressed. 2 Lewis' Sutherland Stat.Const., 2d Ed., p. 701. It must be presumed, also, that it made no mistake in expressing its purpose and intent. 26 Am. & Eng.Ency.L., 2d Ed., p. 653. Where the language of a statute is plain and unambiguous, the 'court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, but the statute must be given effect according to its plain and obvious meaning, and cannot be extended beyond it.' 59 C.J. pp. 955–957. * * *" City of Dickinson v. Thress, 69 N.D. 748, 290 N.W. 653, at 657.

The section authorizing the use of photography in making county records was passed after the statutes relating to indexing of records maintained by the Register of Deeds. To be effective, it must be construed to impliedly amend the statutes relating to indexing. The statute provides that photographic or photostatic copies of any instrument, document, or decree required to be recorded may be filed and kept instead of the record books or records of instruments or documents required by any provision of our code. If the copies may be filed in lieu of the record books, any index-

ing made in reference thereto would have to be to the copies of the documents, rather than to the books for which the documents were substituted.

Photography has been defined as follows:

"[noun] An art or process of producing a negative or positive image directly or indirectly on a sensitized surface by the action of light or other form of radiant energy." Webster's Third New International Dictionary (1961), p. 1702.

The process used herein has been designated by the Register of Deeds as microfilming. Microfilm has been defined as follows:

"[noun] A film often in the form of a strip 16 millimeters or 35 millimeters wide bearing a photographic record on reduced scale of printed or other graphic matter (as for storage or transmission in small space) that is enlarged for reading or viewing.

"[verb transitive] to photograph on microfilm.

"[verb intransitive] to take microfilms." Webster's Third New International Dictionary (1961), p. 1427.

It has been said about microfilming that:

"Special equipment which utilizes a photographic process has been introduced in the filing of office records. The materials are first photographed and the developed film serves as the permanent record. * * *" 5 Encyclopedia Americana (1963) Business Machines and Equipment, p 74i

▆▆ Being a process of photography, microfilming is a legal method of recording instruments, documents, and decrees required to be recorded in the office of the Register of Deeds, which is one of the offices maintained by the county. When the Register of Deeds, after proper authorization by the Board of County Commissioners of Burleigh County, microfilmed the deed

involved herein, after first entering it in the reception book by reference to the document number given it; entered it in the grantor index, the grantee index, and the tract index by reference to the document number; and endorsed upon the original deed the filing data, including the document number, he properly recorded and indexed the deed.

For the reasons stated herein the judgment of the trial court is reversed, and the case is remanded with instructions to the trial court that the writ of mandamus be revoked.

BURKE, C. J., and TEIGEN, J., concur.

KNUDSON, J., not having been a member of the Court at the time of the submission of this case, did not participate.

STRUTZ, Judge (dissenting).

I dissent. I cannot agree with the majority of the court on the effect of the enactment by the State Legislature of Chapter 234 of the 1941 Session Laws, now embodied in Section 11–10–19 of the North Dakota Century Code. That chapter provided that, whenever the county commissioners deem it expedient to do so, photography may be used in the making of county records. I cannot agree that the Legislature intended, by this Act, to permit microfilming of all records required to be kept by the Register of Deeds. The law requires the Register of Deeds to keep a full and true record, in proper books, of many and varied instruments, and also to record, in a suitable book, a description of names, brands, trade-marks, labels, etc.; to keep separate tract indexes for transfers and for liens; to keep separate grantor and grantee indexes; and to record many other instruments. Surely the Legislative Assembly, by merely authorizing the use of photography in making county records, did not intend to substitute the microfilm can for the many and various books required to be kept. That the Legislature did not intend to include microfilming by enactment of this chapter

is further substantiated by the fact that microfilming is known as "microphotography." World Book Encyclopedia; Compton's Pictured Encyclopedia. Had the Legislature intended to include microfilming, it would have provided not only for "photographic or photostatic copies" but also for "microphotographic copies." This it did not do. Construction of the words used by the Legislature cannot go beyond the meaning of the words used where such meaning is clear and unambiguous.

I believe that this court can and should take notice of the fact that, at the time of the enactment of the 1941 statute permitting "photographic or photostatic copies" to be made, photograph and photostat copying machines had appeared on the market, the use of which enabled the making of exact photocopies of instruments and the reproducing of such instruments in far less time than they could be reproduced or copied on a typewriter, which was the usual method of reproduction prior to the invention of the photostat machine. In 1941, the country was preparing for war and help was scarce. It was the use of photocopying machines that was to be permitted and authorized by this statute, not the complete amending of all statutes affecting the recording of instruments by the Register of Deeds and the substitution of microfilm cans for record books. If the Legislature had intended so drastic a change, it should have so stated and not merely have provided:

"That whenever it shall be deemed expedient by the board of county commissioners to use photography in the making of permanent county records, such use is hereby authorized, * *."

The provision that "such copies may be filed and kept instead of the record books or records of instruments and documents required," merely authorizes the filing of photostatic copies instead of the normal copies theretofore made.

Finally, I do not believe a microfilm is a "copy" of the instrument filed. A "copy" implies or requires identity, and normal or reasonable legibility. The word "copy" implies that the instrument so labeled is identical with an original instrument. Blatz v. Travelers Ins. Co., 272 App.Div. 9, 68 N.Y.S.2d 801, 806. A "copy" is a reproduction or duplication of a thing, or that which comes so near to the original as to give to persons seeing it the idea created by the original. McConnor v. Kaufman, D.C., 49 F.Supp. 738, 744 (1943). Surely the copies which the Legislature intended should be kept by the Register of Deeds are copies which would be available to the public. The microfilm is not such a copy. It is something from which a copy can be made, and therefore does not come within the definition of a copy as used in Section 11–10–19 of the North Dakota Century Code.

I would affirm the decision of the district court.